# EXHIBIT "A"

Philip D. Stern, Esq. (NJ Atty. ID #045921984)
Yongmoon Kim, Esq. (NJ Atty. ID #026122011)
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
(201) 273-7117

*Attorneys for Plaintiff, JONATHAN M. DAYE*

| | |
|---|---|
| JONATHAN O. DAYE, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GC SERVICES LIMITED PARTNERSHIP,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION–MERCER COUNTY<br><br>Civil Action<br><br>Docket No. MER-L-_____-21<br><br>**CLASS ATION COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, Jonathan O. Daye ("DAYE"), individually and on behalf of all others similarly situated, by way of Complaint against Defendant, GC Services Limited Partnership ("GCS"), says:

## I. NATURE OF THE ACTION.

1. This action stems from the GCS's conduct when attempting to collect consumer debts in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*.

## II. PARTIES.

2. DAYE is a natural person.

3. At all times relevant to the factual allegations of this Complaint, DAYE was a citizen of the State of New Jersey, residing in Mercer County, New Jersey.

4. At all times relevant to the factual allegations of this Complaint, GCS is a for-profit Delaware limited partnership with principal offices located at 6330 Gulfton

Street, Houston, Texas and is registered to transact business in the State of New Jersey.

### III. LEGAL BASES FOR FDCPA CLAIMS.

5. The legal bases for the claims arising under the FDCPA are set forth in the attached Schedule "A".

### IV. ALLEGATIONS OF FACT.

6. GCS is regularly engaged in the collection of debts on behalf of others.

7. In attempting to collect debts, GCS uses the mails, telephone, the internet and other instruments of interstate commerce.

8. On or after February 20, 2020, GCS mailed a letter to DAYE dated February 20, 2020 which enclosed a Settlement Agreement.

9. A true but partially redacted copy of the letter, including the Settlement Agreement, is attached as Exhibit A.

10. DAYE received the letter within several days after February 20, 2020.

11. GCS mailed the letter in an attempt to collect four student loans (collectively, the "Debt") made to DAYE.

12. The letter identifies GCS as a "debt collector."

13. On information and belief, the letter is a form letter because it is created by merging the text, layout, and graphics are maintained in a template with data particular to the DAYE and the alleged Debt.

14. The letter identifies the creditor as "NAVIENT SOLUTIONS."

15. The letter presents a "settlement offer" which, if DAYE paid the offered amount, "our client will consider your account settled."

16. At the time GCS mailed the letter, it knew:

    16.01. The original creditor was Sallie Mae Bank; and

16.02.   The current creditor was Sallie Mae, Inc.

17.   On information and belief, Navient Solutions and Sallie Mae, Inc. are different persons.

18.   At the time GCS mailed the letter, it also knew the Debt was in default at least since April 30, 2012—*i.e.*, the Debt was in default for at least 7 years, 9 months, and 20 days.

19.   The letter encloses a Settlement Agreement which, if signed and returned, would:

19.01.   Acknowledge each loan comprising the Debt;

19.02.   Acknowledge the amount due; and

19.03.   Entitle the creditor to either enforce the Settlement Agreement or to enforce the underlying obligations.

20.   The letter falsely implies that Daye could be sued to collect the Debt.

21.   Nothing in the letter disclosed the date of default.

22.   Nothing in the letter disclosed that the Debt is not legally enforceable in a court of law.

23.   The letter falsely implies that the Debt is legally enforceable.

24.   The least sophisticated consumer would be deceived into believing that the consumer could be sued on the debt if the consumer did not accept the offered settlement.

25.   Nothing in the letter disclosed the legal consequences of accepting the settlement or making the proposed payment.

26.   The also states that "our client is not obligated to renew this offer."

27.   On information and belief, GCS's client did require GCS to renew the

settlement offer.

### V. CLASS ALLEGATIONS.

1. DAYE brings this action individually and as a class action on behalf of all other persons similarly situated pursuant to *R.* 4:32.

2. **Definitions.** Subject to discovery and further investigation which may cause Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, the "Class", the "Class Period", and the "Class Claims" are defined in the attached Schedule "B".

3. Based on discovery and further investigation (including, but not limited to, Defendant's disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Class, Class Claims, and the Class Period, seek class certification only as to particular issues as allowed under *R.* 4:32-2(d).

4. The identity of each member of the Class is readily ascertainable from GCS's records.

5. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of *R.* 4:32-1(a) because there is a well-defined community interest in the litigation in that:

    5.01. *Numerosity.* Plaintiff is informed and believes, and on that basis alleges, that the members of the Class are so numerous that joinder of all members would be impractical. On information and belief, there are at least 40 members of the Class.

    5.02. *Commonality.* Common questions of law and fact exist as to all members of the Class, the principal issues are whether GCS's conduct as described in the **Allegations of Fact** (above) was the same or substantially similar with respect to GCS's attempts to collect debts from Plaintiff and the members of the Class; and whether such conduct violated the FDCPA.

5.03. *Typicality.* Plaintiff's claims are typical of the claims of each class member. Plaintiff and all members of the Class have claims arising out of GCS's common and uniform course of conduct.

5.04. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

6. This action may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid of any two or all three types however, at the time of commencing this action, Plaintiff expects to seek certification of a class under *R.* 4:32-1(b)(3) because:

(a) the questions of law and fact common to members of the Class appear to predominate over any questions affecting an individual member; and

(b) a class action would be superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

VI. **CAUSE OF ACTION FOR VIOLATION OF THE FDCPA.**

28. DAYE realleges and incorporates by reference the **Allegations of Fact**.

29. DAYE is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

30. GCS is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

31. GCS's letter is a "communication" within the meaning of 15 U.S.C. § 1692a(2).

32. Applying the law to the **Allegations of Fact**, GCS's failure to comply with the FDCPA includes but is not limited to:

> 32.01. Using false, deceptive, or misleading representations and/or means in connection with the collection of any debt, which constitutes a violation of 15 U.S.C. § 1692e;
>
> 32.02. Making a false representation as to the character of any debt in violation of 15 U.S.C. § 1692e(2)(A);
>
> 32.03. Threatening to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. §1692e(5);
>
> 32.04. Using a false representation and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and
>
> 32.05. Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

33. Based on any one violation of the FDCPA, Defendant is liable to Plaintiff and, if this case is maintained as a class action, to the Class, for damages, reasonable attorneys' fees (including litigation expenses), and costs as allowed under 15 U.S.C. § 1692k(a).

### VII. PRAYER FOR RELIEF.

34. WHEREFORE, Plaintiff, Jonathan O. Daye, respectfully requests that the

Court enter judgment against Defendant, GC Services Limited Partnership, as follows:

    34.01.    Certifying that the Cause of Action may be maintained as a class pursuant to *R.* 4:32 including defining the class, defining the class claims, and appointing Plaintiff's attorneys as class counsel;

    34.02.    Awarding damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

    34.03.    Awarding of damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

    34.04.    Adjudging this action to be a successful action under 15 U.S.C. § 1692k(a)(2)(B)(3) and awarding reasonable attorneys' fees including litigation expenses;

    34.05.    Awarding costs of suit as allowed by law;

    34.06.    To the extent the recovery of attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3) causes a negative tax consequence to Plaintiff and/or the Class, a sum sufficient to ameliorate such consequences; and

    34.07.    For such other and further relief as may be just and proper.

**VIII.    JURY DEMAND.**

    35.    Demand is hereby made for trial by jury.

                                  KIM LAW FIRM LLC
                                  *Attorneys for Plaintiff, JONATHAN M. DAYE*

                                  *s/ Yongmoon Kim*
Dated: February 20, 2021                          Yongmoon Kim

IX. **CERTIFICATIONS PURSUANT TO *R.* 1:38-7 AND *R.* 4:5-1.**

I certify that the matter in controversy is not the subject of any other court action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action, EXCEPT: None.

Dated: February 20, 2021                    _____*s/Yongmoon Kim*_____
                                                           Yongmoon Kim

# SCHEDULE "A"
## LEGAL BASES FOR CLAIMS ARISING UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

**First.** The FDCPA "covers conduct taken in connection with the collection of any debt." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3rd Cir. 2014) (internal quotation marks omitted). The Act "was passed to promote ethical business practices by debt collectors." *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002). The Act was necessary because existing consumer protection laws were inadequate as demonstrated by abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors which contributed to the number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a) and 1692(b). Thus, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, *and* to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (internal quotes and ellipsis omitted; emphasis added); 15 U.S.C. § 1692(e).

**Second.** The Act is not concerned with whether the consumer owes the debt. "Congress recognized that 'the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness or marital difficulties or divorce.'" *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007). Nevertheless, "'[a] basic tenet of the Act is that *all* consumers, *even those who have mismanaged their financial affairs resulting in default on their debt*, deserve 'the right to be treated in a reasonable and civil manner.'" *FTC, supra,* 502 F.3d at 165 (emphasis added) quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997).

**Third.** "Congress also intended the FDCPA to be self-enforcing by private attorney generals [sic]." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." *Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); and, see, *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055 (9th Cir. 2011). "Thus, the FDCPA enlists the efforts of sophisticated consumers … as private attorneys general to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jensen v. Pressler and Pressler, LLP*, 791 F.3d 413, 419 (3rd Cir. June 30, 2015) (internal quotation marks omitted).

**Fourth.** The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Brown* at 455. Furthermore, except where the Act expressly

makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing, in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

**Fifth.** Liability under the FDCPA arises upon the showing of a single violation. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993).

**Sixth.** "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

**Seventh.** Liability under the FDCPA is excused *only* when a debt collector establishes, as an affirmative defense, the illegal conduct was either "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), or an "act done or omitted in good faith in conformity with any advisory opinion of the" Consumer Financial Protection Bureau, 16 U.S.C. § 1692k(e). Thus, common law privileges and immunities are not available to absolve a debt collector from liability under the FDCPA. See, *Heintz v. Jenkins*, 514 U.S. 21, (1995); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3rd Cir. 2011); and *Sayyed v. Wolpoff & Abramson*, 485 F. 3d 236, 232-233 (4th Cir. 2007).

**Eighth.** A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). The absence of actual damages is not a bar to such actions as "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n3 (1973). Indeed, Congress, through "the FDCPA[,] permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

**Ninth.** The FDCPA also provides for class relief "capped" at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA." *Weiss, supra,* 385 F.3d at 345. Indeed, while limiting class relief, Congress nevertheless recognized the effectiveness of class actions to enforce the FDCPA and, therefore, mandated that a class action should be maintained "without regard to a minimum individual recovery." *Id.* When a debt collector opposes class certification based on its minimal or negative net worth, "there is a chance that no claims would proceed against Defendants due to a lack of financial incentive, thereby leaving unpunished allegedly thousands of FDCPA violations. This is exactly the kind of result Congress intended to avoid through the creation of the class action form." *Barkouras v. Hecker*, 2006 WL 3544585, 2006 U.S.Dist.Lexis 88998 (D.N.J. Dec. 8, 2006).

## SCHEDULE "B"

The "**Class**" is defined to consist of:

> Each natural person to whom GC Services Limited Partnership mailed a letter during the Class Period to a New Jersey address where the letter dated on or after February 20, 2020 and either: (*i*) identified the creditor as Navient Solutions when its records reflect that the creditor is Sallie Mae, Inc.; or (*ii*) presented a settlement offer on a private student loan which its records reflect was in default more than six years prior to the date of the letter.

The "**Class Period**" means the continuous period of time beginning on the earliest date which is within one year prior to the commencement of this action and ending on the day which is 30 days after the commencement of this action.

The "**Class Claims**" means a claim arising under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p, based on or arising from GCS's mailing a letter in connection with GCS's attempt to collect a debt identifying Navient Solutions as the creditor and/or which made settlement offers on a time-barred student loan.

# EXHIBIT A

CDGCSV90 049
PO Box 1280
Oaks PA 19456-1280
ADDRESS SERVICE REQUESTED

 **GC Services Limited Partnership**

 **Please call: 855-853-5534**
Calls may be monitored or recorded.

February 20, 2020

USE ENCLOSED ENVELOPE AND SEND PAYMENT TO:

483587803

||I·II|I···I·IIII·I··II|····II|··III|··II·I|III·I|I|II|

Jonathan O Daye
REDACTED
REDACTEDREDACTED

**P.O. BOX 1161**
**HOUSTON TX 77251**

| YOU OWE: **NAVIENT SOLUTIONS** | Account Number: REDACTED387 |
|---|---|

***PLEASE DETACH AND RETURN UPPER PORTION OF STATEMENT WITH PAYMENT***

February 20, 2020

Account Number: REDACTED387
Account Balance: **$120,648.29**

Dear JONATHAN O DAYE,

We would like to let you know that NAVIENT SOLUTIONS has authorized us to make you a settlement offer on your account. If you pay $17,585.00 our client will consider your account settled. Please note the payment must be for the exact amount stated in this letter and must be received by 03/21/2020 or this particular offer will be null and void.

If you wish to take advantage of this offer, either call GC Services at 855-853-5534 or mail us your payment. Please understand our client is not obligated to renew this offer.

If you have any questions or wish to propose an alternative payment solution, please do not hesitate to contact us. We have Borrower Assistance Representatives to assist you from: Mon-Thur 8AM to 9PM, Fri 8AM to 5PM, Sat 8AM to noon CT

Yours very truly,

M. Mitchell
Collection Manager

---

This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.
**NOTICE: SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION**
GC Services Limited Partnership – 6330 Gulfton, Houston, TX 77081
0763-80     SIF     REDACTED3870     57046850

---



# EXHIBIT A
EXHIBIT A

Page 12 of 15

# EXHIBIT A

Federal and state law prohibit certain methods of debt collection, and require that we treat you fairly. If you have a complaint about the way we are collecting your debt, please visit our website at www.gcserv.com or contact the FTC online at www.ftc.gov; by phone at 1-877-FTC-HELP; or by mail at 600 Pennsylvania Ave., NW, Washington, DC 20580. If you want information about your rights when you are contacted by a debt collector, please contact the FTC online at www.ftc.gov.

Case 3:21-cv-07981-MAS-TJB Document 1-1 Filed 04/02/21 Page 15 of 16 PageID: 21
MER-L-000376-21 02/29/2021 11:18:39 PM Pg 3 of 4 Trans ID: LCV2021899200

# EXHIBIT A

### Settlement Agreement

WHEREAS, **NAVIENT** holds Promissory Notes (the "Notes") that evidence student loans made to JONATHAN O DAYE (REDACTED 232) the Borrower; and

WHEREAS, the Borrower has defaulted on the Notes; and

WHEREAS, **NAVIENT** has engaged **GC Services** to collect the principal and interest on the student loans; and

WHEREAS, **GC Services**, represents that it is the authorized agent of **NAVIENT** for the purposes of the Release Agreement; and

WHEREAS, **NAVIENT** and the Borrower desire to resolve all issues and disputes between them on the terms set forth below.

NOW, THEREFORE, in consideration of the mutual promises and consideration set forth below, and other good and valuable consideration, the receipt of which are hereby acknowledged, the parties hereby agree to the terms and conditions provided below.

1. Borrower is indebted to **NAVIENT** and the Borrower understands that this settlement pertains specifically to 4 account(s) REDACTED wherein **NAVIENT** has engaged **GC Services** to collect the amount due **NAVIENT**. Specifically known to **GC Services** as GCS Account Number(s) REDACTED 387.

2. The Total Amount due pursuant to the Notes is $120,648.29 including principal of $70,336.80, accrued and unpaid interest of $50,293.78, and collection costs and other charges of $17.71, as of February 20, 2020.

3. The parties agree that the Borrower shall pay the sum of $17,585.00 (the "Stipulated Sum") as a full release on the Notes. The Borrower agrees to pay the Stipulated Sum by making one payment of $17,585.00 to **GC Services** by March 21, 2020.

4. If the Stipulated Sum is not received as of its due date, **NAVIENT**, at its option, and without further notice, may enforce this Settlement Agreement or may declare the Total Amount due pursuant to the Note payable in full and take all actions allowed by law to collect the full amount due pursuant to this Settlement Agreement or the Note, as applicable, plus interest accrued thereon and all expenses of enforcement including, without limitation, reasonable attorney fees, as allowed by law.

**See Reverse Side**

REDACTED 387 _ NVPL



# EXHIBIT A
EXHIBIT A
Page 14 of 15

# EXHIBIT A

5. This Settlement Agreement is made in compromise of a disputed claim. As part of the consideration for this Settlement Agreement, Borrower waives any claim Borrower may have against **NAVIENT** and/or **GC Services**. The parties to this Settlement Agreement recognize that any forgiveness, retraction of negative data, and any other consideration, or agreement made pursuant to this Settlement Agreement, is not an admission by **NAVIENT** or **GC Services** of any liability for any claims which were or could have been asserted by Borrower against **NAVIENT** and/or **GC Services**, which liability is hereby expressly denied.

6. Borrower expressly agrees that Borrower and Borrower's agents will not, at any time, directly or indirectly, except as expressly authorized in writing by **NAVIENT**, publicize, divulge or disclose to any person, entity, or media representative, the terms of this Settlement Agreement, except that Borrower may disclose this Settlement Agreement to Borrower's legal advisor and accountant to the extent necessary to receive professional advice, and then only if such persons are expressly made aware of this confidentiality provision and agree to be bound hereby.

7. Except as modified in this Settlement Agreement, the provisions of the Note remain of full force and effect.

8. Borrower represents Borrower is of lawful age and has had the opportunity to consult legal counsel.

9. Borrower understands that so much of the Original Debt forgiven by **NAVIENT** will be reported to the Internal Revenue Service, and that Borrower may incur income tax liability on some or all of such amount.

**ACCEPTED AND AGREED**

**NAVIENT /GC Services**

By: _____          _____
Date                                                                           Borrower                    Date

REDACTED 387 _ NVPL



EXHIBIT A

Page 15 of 15