# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN O. DAYE, individually and on behalf of himself and those similarly situated, <br><br>                   Plaintiff, <br><br>    vs. <br><br> GC SERVICES LIMITED PARTNERSHIP; <br><br>                Defendant. | Case 3:21-cv-07981-MAS-TJB |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Philip D. Stern
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax: (201) 273-7117

*Attorneys for Plaintiff and the Proposed Class*

# TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES ............................................................................ ii

II.   INTRODUCTION ........................................................................................1

III.  STATEMENT OF FACTS ..............................................................................2

IV.   ARGUMENT.............................................................................................10

    A.    Standard of Review and Plaintiff's Rule 56(d) Request. ...................10

    B.    Defendant Has Failed to Satisfy Its Burden.......................................12

V.    CONCLUSION..........................................................................................18

## I.    TABLE OF AUTHORITIES

**Cases**

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995)........................................................................9

*Guidotti v. Legal Helpers Debt Resolution, LLC,*
716 F.3d 764 (3d Cir. 2013) ........................................................11

*Jackson v. Midland Funding LLC,*
468 F. App'x 123 (3d Cir. 2012) ........................................... 10, 16

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,*
636 F.2d 51 (3d Cir. 1980) ...........................................................9

*Pepe v. Cavalry SPV I, LLC,*
No. 2:15-08634 (WJM), 2016 U.S. Dist. LEXIS 68948 (D.N.J. May 26, 2016)................................................................................................16

*Rent-A-Center, W., Inc. v. Jackson,*
561 U.S. 63 (2010).......................................................................10

*Vasquez v. Nat'l Enter. Sys.,*
No. 19-cv-16418-SDW-AME, 2021 U.S. Dist. LEXIS 72320, 2021 WL 1399862 (D.N.J. Apr. 14, 2021) ..................................................13

**Other Authorities**

Fed. R. Civ. P. 56(d) .............................................................9, 11

## II.    INTRODUCTION

Defendant's Motion to Compel Arbitration should be denied. Defendant failed to meet its burden to demonstrate the absence of a material dispute of fact as to whether Plaintiff agreed to arbitrate his FDCPA claims. Plaintiff's claims arise from Defendant's collection letter concerning an "Account." Without evidence, Defendant contends that the Account consists of loans from diverse lenders and one of the promissory notes contains an arbitration clause. The identified promissory notes do not literally add up to what Defendant contends to be the Account's principal balance. The express language of the arbitration clause excludes debt collectors unless the lender is a co-defendant (which is not the case here). Defendant's servicing agreement regarding the Account expressly provides that Defendant is an "independent contractor" excluding Defendant from being an "agent" covered by the arbitration clause. These facts bolstered by drawing reasonable inferences favorable to Plaintiff compel the conclusion that Defendant failed to meet its burden and, therefore, its Motion should be denied.

## III.    STATEMENT OF FACTS

Plaintiff relies on the Declaration of Philip D. Stern filed with this Brief. The Declaration identifies five documents produced by Defendant in discovery and marked "Confidential" pursuant to a Discovery Confidentiality Order. The five documents are the first pages from the four promissory notes which Defendant identified as comprising the Account which it sought to collect, and the servicing agreement between Defendant and Navient Portfolio Management, LLC.

Plaintiff Jonathan O. Daye commenced this action in New Jersey state court after receiving a collection letter from Defendant GC Services Limited Partnership attempting to collect an "Account Balance" alleged owed to "Navient Solutions." GC Services removed the case.

The letter appears in Doc. 1-1 at 13. The letter only refers to an "Account" and advises that Navient Solutions authorized GC Services "to make a settlement offer on your *account*." (Emphasis added.) Although the letter does not mention any enclosure, it enclosed a two-page Settlement Agreement. The Settlement Agreement states that "Navient holds Promissory Notes" and "[t]he Total Amount due pursuant to the Notes...include[es] principal of $70,336.80."

Neither the letter nor its enclosed Settlement Agreement identifies the date, amount, or other information from which to identify any particular promissory note which might be included in the "Account." Nevertheless, Defendant contends there

2

are four Notes, copies of which it provided in discovery and redacted copies of which are attached to its Motion authenticated by its own employee—not Navient Solutions as the alleged "holder" of the Notes. Because some of the redacted material from the first page of each Note is relevant, a copy of those pages are attached as Exhibits B-E to the Declaration of Philip D. Stern.

The Notes were made to different lenders. Each Note has the same title, "Creative Education Loan," and the same subtitle, "Application and Promissory Note." The first page of each Note includes the Loan Amount Requested and, in the lower right contains a chart in which the school recorded the date and amount of each disbursement. The following Table identifies the date, lender, amount requested, and disbursement records for each Note:

| Table 1 | | | | |
|---------|------|--------|-------------------|--------------|
| Exhibit | Date | Lender | Amount Requested | Disbursements |
| B | 1/5/2004 | Bank One, N.A. | $15,000 | 1/28/04 $7,500<br>3/25/04 $7,500<br>Total Amount Approved $15,000 |
| C | 7/21/2004 | Bank One, N.A. | $10,000 | 8/12/04 $1,667<br>9/23/04 $1,667<br>1/3/05 $1,666<br>Total Amount Approved $5,000 |
| D | 4/5/2006 | The First National Bank in Sioux Falls | $13,000 | 4/6/06 $4,333<br>6/29/06 $4,333<br>9/21/06 $4,334<br>Total Certified Amount $13,000 |
| E | 11/7/2007 | Sallie Mae Bank | $8,045 | [Blank] |
| | *This is the only Note which contains an arbitration provision.* | | | |

3

Based on the amounts shown in the Notes and reflected in the Table 1, the aggregate amount *requested* is $46,045 and the aggregate amount *disbursed* is $33,000—not $70,336.80, the stated principal in GC Services' collection letter.

Furthermore, there is no evidence that Navient Solutions is the holder of these Notes. None of the Notes are endorsed and none have an attached allonge. *See* N.J.S.A. 12A:3-201(b) (under UCCC, transfer of an instrument by negotiation requires transfer of possession and indorsement). In Defendant's Motion, Eric Gates, a GC Services representative—not a Navient Solutions representative, stated that the Account being collected "pertained" to four loans and identified the four Notes as "copies of the four Creative Education Loans." Mr. Gates's declaration is not proof that Navient Solutions is a holder or that any of the Notes bear any relationship to the Account which Defendant sought to collect.

The (1) gross disparity between the principal amount as stated in the letter ($70,336.80) and the amounts requested ($46,045) and disbursed ($33,000) as stated in the proffered Notes, (2) absence of an endorsement or allonge, and (3) lack of any sworn statement from the alleged holder is that these four Notes raises the reasonable inference that these Notes are not connected to the Account.

Furthermore, only the Sallie Mae Note (Exhibit E) contains an arbitration provision and Defendant relies exclusively on it. Noticeably, the bottom portion of the other three Notes—where the educational institution certifies to the

4

disbursement of the loan proceeds—is completed and signed by a school representative. But the same section in the Sallie Mae Note is blank leading to the reasonable inference that no disbursements were made as to Plaintiff's application for an $8,045 loan and there was no loan made arising from that document.

If, hypothetically, the Account consisted of only the Sallie Mae Note, Defendant has failed to show that it is covered by the Note's arbitration provision. Defendant concedes that it is not a party to the Note. There are two successive sentences from the arbitration provision which are central to whether Defendant can enforce arbitration. The right to compel arbitration is limited to two classes. The first sentence provides the list of what we would call the first class, being those who can compel arbitration for claims made against them. The second sentence identifies the second class being those who can compel arbitration *only if* they are a co-defendant with someone in the first class.

Defendant's Brief did not quote these provisions in their entirety. Thus, those in the first class must fall within this definition:

> **"You,"** **"your"** and **"yours"** mean the Lender [*i.e.*, Sallie Mae Bank]; any other subsequent holder of this note; Sallie Mae, Inc.; SLM Financial Corporation; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities; and all officers, directors, employees, agents and representatives thereof.

Those in the second class fall within the following definition:

5

> It also includes any party named as a co-defendant
> with you in a Claim asserted by me, such as
> investors or potential investors, credit bureaus,
> credit insurance companies closing agents. escrow
> agents, insurance agents, loan originators, rating
> agencies, loan servicers, *debt collectors*, loan
> guarantors, performance bond trustees, tuition
> recovery funds, the School, and any of the School's
> financial aid offices or officers. [Emphasis added.]

Before delving into the facts relating to whether Defendant falls within

either class, a brief discussion is in order regarding the clause's definition of

arbitrable claims. Defendant's Brief quoted the definition but placed an ellipsis in

lieu of the following underscored phrase:

> **"CLAIM"** means any legal claim, dispute or
> controversy <u>between you and me</u> that arises from or
> relates in any way to the Note.

By limiting an arbitrable claim to those "between you and me" requires knowing

whether Plaintiff's claims against Defendant are claims "between you and me."

We concede that Plaintiff is "me." Thus, we turn to the facts as to whether

Defendant is "you."

There is no dispute that, if Defendant falls within the second class, it cannot

compel arbitration because there is no one in the first class who is a co-defendant.

Defendant contends that its relationship with Navient Solutions—the

creditor named in its collection letter—brings it within the first class because,

Defendant argues, it is either an "agent" or an "affiliate" of Navient Solutions.

6

As shown in Exhibit A to the Stern Declaration, there is no privity between Defendant and Navient Solutions. Instead, Defendant is under contract with Navient Portfolio Management LLC. Defendant's Motion provides information which it contends creates a link between the two Navient companies such that Defendant is in privity with a wholly owned affiliate of Navient Solutions.

Navient Solutions is, allegedly, "any other subsequent holder of this note." As observed above, there is no showing that Navient Solutions is the holder of any note because, to be a subsequent holder, the Sallie Mae Note must be endorsed and Navient Solutions must have possession of it. But, assuming *arguendo* that it is a holder, Defendant could not fall within the first class unless it is either a "wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities; and all officers, directors, employees, agents and representatives thereof."

Defendant claims it is an "agent" because its servicing agreement with Navient Portfolio Management LLC—not Navient Solutions—uses the term "special agent" to describe Defendant's limited role when settling debts notwithstanding the agreement's general disclaimer of any agency relationship. The flaw in Defendant's argument is that whatever "special agent" means in its agreement with Navient Portfolio Management, it is not an "agent" in the common

7

and plain meaning used in the Sallie Mae Note. And this is certainly true when, as is the case here, reasonable inferences must be drawn in Plaintiff's favor.

The "second class" definition supports the conclusion that an "agent" does not mean debt collectors. Under the second class definition, "debt collectors" may only rely on the arbitration clause if a first tier party is a co-defendant, which is no the case here. If debt collectors fell within the first tier definition by being an "agent," the second tier definition would be superfluous.

Defendant also point to "affiliate" in the first class definition but fail to offer any proof that it is a "wholly or majority owned…affiliate[]" of Navient Solutions.

If, notwithstanding the foregoing, the Court were to conclude Defendant falls with the first class, then it must be determined whether Plaintiff's claims fall within the arbitration clause's definition of a "Claim."

Plaintiff's claim arises from Defendant's to collect the balance on an "Account" and not any particular loan. Accepting Defendant's version that the Account was created from four promissory notes, the principal amount of all notes is $70,336.80. Thus, assuming the Sallie Mae Note were fully funded for the requested amount of $8,045 (despite the blank portion at the bottom of the Note which creates the reasonable inference that it was not funded), that amount represents only 11% of the Account and is the only Note containing an arbitration clause. Moreover, no arbitration agreement existed between Plaintiff and the

8

lenders involved in each of the three other Notes. Defendants have not shown why an arbitration clause governing a promissory note representing only 11% of the amount due on an account which is only one of four loans made with different lenders should predominate and subject Plaintiff to arbitrate his claims and waive class action claims when Navient Solutions choose to arbitrarily pool those otherwise independent loans into an "Account."

Thus, Defendant has failed to present undisputed material facts demonstrating that (1) Plaintiff's claims arise from the Sallie Mae Note, (2) Defendant is an "agent" or "affiliate" and not a "debt collector."

9

## IV.   ARGUMENT

### A. Standard of Review and Plaintiff's Rule 56(d) Request.

Arbitration is a matter of contract between the parties and a judicial mandate must be predicated upon an agreement to that effect. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) (citations omitted).  In deciding whether a dispute is arbitrable, courts must ensure that "arbitration agreements, like other contracts, are 'enforced according to their terms,' and according to the intentions of the parties." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947 (1995) (internal quotation marks and citations omitted).

The Supreme Court explained that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

> establishes procedures by which federal courts implement § 2's substantive rule. Under § 3, a party may apply to a federal court for a stay of the trial of an action "upon any issue referable to arbitration under an agreement in writing for such arbitration." Under § 4, a party "aggrieved" by the failure of another party "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." The court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Ibid*.

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

10

The Third Circuit clarified when an application to compel arbitration can be decided under the Rule 12(b)(6) standard, the Rule 56 standard, or following an evidentiary hearing.

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, at 774 (3d Cir. 2013) (internal quotation marks, editing, and citations omitted).

Here, Defendant's Motion is reviewed under the Rule 56 standard which includes Fed. R. Civ. P. 56(d). Defendant failed to produce its witness in response

11

to Plaintiff's notice under Rule 30(b)(6). *See* Docs. 18 and 19. The Court

determined to stay further discovery until the outcome of this Motion. Doc. 22.

Although Plaintiff contends that Defendant's submissions fail to meet it burden

under the Rule 56 standard, if the Court were nevertheless inclined to grant

Defendant's Motion, Plaintiff should be entitled to first take Defendant's

deposition because that deposition may produce evidence relevant to Defendant's

right to compel arbitration.

### B. Defendant Has Failed to Satisfy Its Burden.

As discussed in Statement of Facts, there are many missing parts to

Defendant's Motion.

First, Defendant has not provided proof that the four identified promissory

notes comprise the Account which Defendant sought to collect for which Plaintiff

asserts his FDCPA claims. Indeed, discrepancies between the information in those

notes and in Defendant's collection letter raise reasonable inferences that those

notes are not connected to the Account.

Second, Defendant has not provided any proof that the one promissory note

containing the arbitration clause—the Sallie Mae Note—was a funded loan. To the

contrary, the absence of any disbursement record or school certification on that

note when all the other notes contain those records leads to the reasonable

inference that there was no funding.

12

Third, Defendant has not provided any proof that Navient Solutions is the holder of the Sallie Mae Note which can only be transferred by physical delivery ad indorsement.

Fourth, Defendant has not provided any proof that, where the successor holder of notes made to different lenders commingles the balance due on one note with the balances due on other notes to form an "account," that the arbitration clause in that one note requires arbitration for claims arising from the unlawful attempt to collect the total account balance when that note's balance comprises only 11% of the account's principal balance.

Fifth, Defendant's servicing contract treats Defendant as Navient Solution's independent contractor. Thus, the reasonable inference is that Defendant is not a generic "agent" within the meaning of the arbitration provision in the Sallie Mae Note. Furthermore, the contract's limited purpose designation of a "special agent" does not negate the reasonable inferences which Plaintiff enjoys under the Rule 56 standard.

Sixth, Defendant has not presented any proof that it is a wholly owned or majority owned subsidiary of any Navient company and, therefore, is not an "affiliate" within the meaning of the arbitration provision.

Defendant's reliance on *Vasquez v. Nat'l Enter. Sys.*, No. 19-cv-16418-SDW-AME, 2021 U.S. Dist. LEXIS 72320, 2021 WL 1399862 (D.N.J. Apr. 14,

13

2021) is misplaced. Defendant's contend that *Vasquez* makes Defendant an "affiliate." There, Judge Wigenton concluded, "Defendant [a debt collector] is therefore entitled to enforce the provision's terms as an affiliate of Navient, a Sallie Mae[, Inc.] affiliate." Unfortunately, *Vazquez* did not expound on the evidence submitted which demonstrated that the debt collector was an "affiliate" of Navient.

Unlike the debt collector in *Vazquez*, Defendant does not contend that Navient Portfolio Management is an affiliate of Sallie Mae, Inc. Instead, Defendant contends that Navient Solutions is the successor to the lender, Sallie Mae Bank, and Navient Portfolio Management—the party with whom Defendant is in privity—is an agent or affiliate of Navient Solutions. Under the Sallie Mae Note here, an "affiliate" can only be one which is wholly or majority owned by either Navient Solutions or Navient Portfolio Management but Defendant has provided no facts to show such a relationship.

Moreover, *Vazquez* does not address the separate, "second class" status accorded to "debt collectors." By construing the clause so that a debt collector is an agent, a first class party, renders the clause defining the second class to be meaningless. If, as Defendant contends, the arbitration provisions should be construed to deem Navient's debt collectors as its agents (and, therefore, entitled to compel arbitration in the absence of any co-defendant), then that construction

14

requires ignoring the explicit inclusion of debt collectors in the second class. *Vazquez* did not discuss or resolve the fact that debt collectors are in the second class.

    *Vazquez* is also distinguishable because, unlike this case, it appears no one presented the court with the debt collector's servicing agreement. Here, the servicing agreement expressly provides that "Contractor [*i.e.*, Defendant] is, and in carrying out the terms of this Agreement will be, an independent contractor" (Art. II, par. A), and "Contractor is an independent contractor and not an employee" (Art VI, par. D). Under the Rule 56 standard, those provisions forecloses any possibility that Defendant could be an "agent" as a matter of law.

    The servicing agreement creates a narrowly defined "special agent" relationship giving Defendant specified limited authority. Specifically, "Contractor, as special agent of Client, is authorized to settle Accounts…in accordance with the guidelines of Attachment F." (Art. V, par. B) The Court cannot resolve what that vague and ambiguous term means—or that it means the same thing as "agent" in the arbitration provision—as a matter of law under the Rule 56 standard. There is nothing to show that this "special agent" authorization as an exception to the general classification of Defendant as an independent contractor means that the Defendant debt collector is an "agent," and that Defendant is not a "debt collector" under the Note.

15

Seventh, Defendant has not established that Plaintiff's claims are a "claim" as defined in the arbitration clause. A claim under the arbitration clause is one that "arises from or relates in any way to the Note." Plaintiff's claims arise from an Account created by Navient Solutions to administer several student loans. Defendant's letter itself says nothing about any loan and refers only to an Account. The first mention of loans is in the Settlement Agreement enclosed with Defendant's collection letter but no specific loans are mentioned.

Moreover, Plaintiff's claims have nothing to do with any promissory notes. Instead, they have to do with Defendant's conduct when attempting to collect a debt arising from an Account.

FDCPA claims against a debt collector do not arise out of the same transaction as the debt itself. In somewhat different contexts, courts in this District have identified the clear distinctions between a claim arising under the FDCPA for the conduct of a debt collector and a claim arising from the underlying debt.

In *Pepe v. Cavalry SPV I, LLC*, No. 2:15-08634 (WJM), 2016 U.S. Dist. LEXIS 68948 (D.N.J. May 26, 2016), Judge Martini concluded that a debt buyer could not raise a recoupment defense to the consumer's FDCPA claim.

> Cavalry's recoupment claim does not arise from the same transaction as Pepe's FDCPA claim. Quite simply, the "transaction" underlying Pepe's FDCPA claim is Cavalry's filing of the state court collection action. The "transaction" underlying

16

> Cavalry's recoupment claim, on the other hand, is
> the debt itself.

*Pepe*, at *11-12.

Judge Martini relied, in part, on *Jackson v. Midland Funding LLC*, 468 F. App'x 123 (3d Cir. 2012). In *Jackson*, the Third Circuit affirmed Judge Irenas' decision, 754 F.Supp.2d 711 (2010), and concluded that the debt and the FDCPA claim "do not arise out of a common nucleus of operative facts." *Jackson*, 468 F. App'x at 126. Thus, Plaintiff's FDCPA claim does not arise from that Note—and it does not arise out of the Account which was created by combining the obligations owed on several promissory notes.

For these reasons, Defendant's Motion fall far short of the mark and, to the extent the Court may disagree, Plaintiff seeks Defendant's deposition before any adverse ruling.

17

V.    **CONCLUSION**

For the foregoing reasons Defendant's motion to compel arbitration and stay proceedings should be denied.

Respectfully submitted,

KIM LAW FIRM LLC

By:            *s/Philip D. Stern*
Dated: November 12, 2021            Philip D. Stern

18