**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JONATHAN O. DAYE,

        Plaintiff,

v.

GC SERVICES LIMITED PARTNERSHIP,

        Defendant.

Civil Action No. 21-7981 (MAS)(TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on its Order to Show Cause as to why it has Article III standing over this suit. (ECF No. 26.) As the removing party with the burden to demonstrate jurisdiction, Defendant GC Services Limited Partnership ("GC Services") submitted a response. (ECF No. 27.) Plaintiff Jonathan O. Daye ("Daye") also submitted a response urging the Court to find standing. (ECF No. 29.) The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court finds that it lacks Article III standing and remands this matter to state court.

**I.     BACKGROUND**

    This is a case about allegedly misleading debt collection letters for unpaid student loans. GC Services' business model centers on buying debt from third parties and attempting to collect on that debt. (Compl. ¶¶ 6, 7, ECF No. 1-1.) In February 2020, GC Services sent Daye a form letter (the "Letter") to collect on four old student loan debts that it presumably purchased from the current creditor. (*Id.* ¶¶ 8, 11, 13.) According to the Complaint, the debt was in default since April

2012 and Sallie Mae Bank initially gave Daye the loan, with Sallie Mae, Inc. as the current noteholder. (*Id.* ¶¶ 16, 18.) What did Daye do in response to receiving the Letter in February 2020? Nothing at all. Indeed, based on the Complaint, it does not appear he even read the Letter. (*See generally* Compl.) Nonetheless, should Daye have read the Letter, it listed the creditor as Navient Solutions. (*Id.* ¶ 14.) He also would have observed that the Letter included a "settlement offer" that represented to Daye that if he paid the listed amount, GC Services' "client will consider [Daye's] account settled." (*Id.* ¶ 15.) Enclosed within the Letter was a Settlement Agreement, offering a chance to square up Daye's debt if signed and returned, but doing so would have served as Daye's acknowledgment of the loan and the amount he owed the lender. (*Id.* ¶ 19.) As Daye sees it, the Letter was misleading because it did not detail (1) the debt's past-due default date, (2) the debt's legal enforceability (or lack thereof), and (3) Daye's legal liability should he decline to pay the debt. (*Id.* ¶¶ 20-22.)

Although Daye did not read the Letter when he first received it, he did eventually retain a lawyer and filed suit against GC Services in New Jersey state court under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. (*See generally* Compl.) In April 2021, GC Services removed the action to federal court. (ECF No. 1.) Daye sues individually and as a class with others similarly situated, charging GC Services with sending him correspondence that violates the FDCPA through its many alleged misrepresentations. (*See generally* Compl.) Absent from Daye's grievances are any allegations that he paid part of the debt, suffered external consequences from receiving the Letter, or suffered reputational harm.

As these events were playing out, the legal landscape for what types of suits have standing in federal court shifted. The shift started with *TransUnion LLC v. Ramirez*, where the Supreme Court determined that individual plaintiffs must show something more than that the defendant

2

simply violated a federal statute; rather, plaintiffs must plead a harm that "is sufficiently concrete to qualify as an injury in fact." 141 S. Ct. 2190, 2204-05 (2021). Addressing a lawsuit under the Fair Credit Reporting Act ("FCRA"), the Supreme Court drew a distinction between "a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and . . . a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 2205. In the year since *TransUnion*, district courts have grappled with its implications for other statutory schemes such as the FDCPA. *E.g.*, *Barclift v. Keystone Credit Servs.*, *LLC*, No. 21-4335, 2022 WL 444267, at *1 (E.D. Pa. Feb. 14, 2022) (questioning whether a simple violation of the FDCPA automatically establishes a concrete injury and concluding that it does not). Concerned over its own jurisdiction in this matter, this Court issued an Order to Show Cause. (Order to Show Cause ("OTSC"), ECF No. 26.) The standing issue is now fully briefed before the Court.

## II.     LEGAL STANDARD

Federal courts are courts of limited jurisdiction, governed by Article III of the U.S. Constitution which engrafts limitations on the judicial power of federal courts to decide only "cases" or "controversies." U.S. Const. art. III, § 2. This limitation serves the purpose of "prevent[ing] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citations omitted). Embedded within Article III is the doctrine of standing that is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish Article III standing, "a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

*(TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

A plaintiff must have standing for a federal court to exercise subject matter jurisdiction over that plaintiff's claims. *Lujan*, 504 U.S. at 560. "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Id.* at 561. Federal courts have a duty to assess whether standing exists "throughout the case . . . not merely at the time the complaint is filed." *Schumacher v. SC Data Ctr., Inc.*, 912 F.3d 1104, 1105 (8th Cir. 2019) (internal citations and quotations omitted). Courts may "dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage in the proceeding." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); Fed. R. Civ. P. 12 (h)(3).

### III. DISCUSSION

In the wake of *TransUnion*'s impact on FCRA cases, the issue of standing in FDCPA cases fell under heightened scrutiny. After all, what's good for the goose is good for the gander. As one litigant phrased it in briefing before this Court, "[f]ollowing the Supreme Court's decision in [*TransUnion*], it has been nothing short of a bloodbath for FDCPA claims and standing" in certain federal circuits.[1] District courts are now tasked with reviewing a plaintiff's FDCPA claims to ensure Article III standing, as clarified in *TransUnion*, at each stage of litigation. *E.g.*, *Sandoval v. Midland Funding, LLC*, No. 18-9396, 2022 WL 3998294, at *1-2 (D.N.J. Sept. 1, 2022) (vacating summary judgment order on reconsideration because the court lacked standing where FDCPA claim alleged only statutory harm). A growing chorus of courts in this district and elsewhere have found FDCPA complaints lacking as far as pleading concrete harms, often times

---

[1] *See* Plaintiff's Motion for Leave to File Amended Complaint, *Brown v. Dynamic Recovery Solutions, LLC*, No. 20-6762 (D.N.J. June 20, 2022), ECF No. 38.

with plaintiffs merely alleging that the defendant violated the statute and therefore infringed on their rights.[2] *E.g.*, *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. June 24, 2022) (finding in FDCPA case that informational confusion without any other harm lacked Article III standing); *Kola v. Forster & Garbus LLP*, No. 19-10496, 2021 WL 4135153, at *7 (S.D.N.Y. Sept. 10, 2021) (holding that plaintiff lacked standing for merely pleading that she received a deceptive debt collection letter but took no further action because of the letter other than suing the debt collector); *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021) (finding in an FDCPA case that "confusion alone is not a concrete injury for Article III purposes").

Courts generally look to several factors in determining standing. For starters, in examining whether the plaintiff alleged a concrete harm, district courts take guidance from "history and tradition[,] [which] offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *Madlinger v. Enhanced Recovery Co., LLC*, 21-154, 2022 WL 2442430, at *3 (D.N.J. July 5, 2022) (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2008)). In doing so, courts consider whether the alleged harm has a close relationship to harms that "traditionally . . . provid[ed] a basis for a lawsuit in English or American courts." *Spokeo, Inc.*, 578 U.S. at 341. As part of the equation, courts consider "whether a plaintiff has pled more than a mere injury-in-law." *Rohl*, 2022 WL 1748244, at *3.

---

[2] This Court previously dismissed an FDCPA claim on standing grounds because the plaintiff did not assert a "concrete and particularized" injury. *Rohl v. Prof'l Fin. Co.*, No. 21-17507, 2022 WL 1748244, at *2-4 (D.N.J. May 31, 2022) (finding that an allegedly misleading letter in violation of the FDCPA failed to establish a concrete injury without more). Since the Court's decision in *Rohl*, wind beneath the no-standing sails in FDCPA cases has picked up significantly across the federal judiciary.

Enter Daye's Complaint in this matter. It alleges that the Letter misstated the creditor, contained deceptive information about the debt's enforceability, attempted to induce Daye into acknowledging the debt, lied about whether the creditor would renew the settlement offer, and could have deceived the least sophisticated consumer—all in contravention of the FDCPA. (Compl. ¶¶ 17-27.) The problem is, Daye does not even allege that he read the Letter. Instead, Daye acknowledges that the Complaint represents he "received the [L]etter" but "[i]t does not . . . allege he read the [L]etter." (Pl.'s Resp. to OTSC 7, ECF No. 29; *see also* Compl. ¶ 10.) Nor does Daye allege that GC Services distributed its allegedly misleading Letter to third parties, which may align with traditional notions of defamation. (*See generally* Compl.; *cf. TransUnion*, 141 S. Ct. at 2209 (finding publication of injurious information to third party associated with tort of defamation).) At bottom, then, Daye raises only a quintessential injury-in-law. *TransUnion*, 141 S. Ct. at 2210 ("The mere presence of an inaccuracy in an internal . . . file, if it is not disclosed to a third party, causes no concrete harm."). But Daye offers the Court another interpretation of *TransUnion*: the Supreme Court left the FDCPA untouched because the statute already requires particularized and distinctive harm to plaintiffs bringing these suits. (Pl.'s Resp. to OTSC at 2.) The Court disagrees. Without reading the Letter, Daye did not suffer any harm and therefore he lacks standing. *Oh v. Collecto, Inc.*, No. 20-1937, 2021 WL 3732881, at *4 (D.N.J. Aug. 23, 2021) (finding no concrete harm where plaintiff failed to read debt collection letter). As *TransUnion* put into sharp relief, Daye may not merely allege that GC Services violated the FDCPA. *Sandoval*, 2022 WL 3998294, at *2 (finding that after *TransUnion*, "invasion of [p]laintiffs' substantive rights protected by the FDCPA" is insufficient harm to confer Article III standing).

To be sure, even if Daye had read the offending Letter, informational harm alone fails to provide standing without more. *See Madlinger*, 2022 WL 2442430, at *6 (indicating that plaintiff

needs to plead reliance on misleading debt collection letter to establish standing by comparison to common law fraud or negligent misrepresentation). Nor could Daye merely plead that after reading the Letter he was "confused." *Vaughan*, 2022 WL 2289560, at *5 (informational confusion insufficient for standing); *Ward*, 9 F.4th at 363 (same). That's because without "downstream consequences" or "adverse effects" from the statutory harm, alleging pure statutory violations bears no resemblance to common law actions and therefore does not confer standing. *Sandoval*, 2022 WL 3998294, at *1. It's straightforward enough: "No concrete harm, no standing." *TransUnion*, 141 S. Ct. at 2200. The Court does not suggest that all FDCPA claims are doomed. *See Ward*, 9 F.4th at 363 ("Even if the bare procedural violation of the FDCPA alone is insufficient to establish standing, [a plaintiff]" may still have standing if he can show a "concrete injury that flow[ed] from [the] statutory violation"). But Daye needs to allege some form of concrete injury that accompanies the statutory violation; some consequence that stemmed from Daye's reliance on the Letter; some adverse occurrence that arose from the Letter; or some parallel harm caused by a third party receiving the Letter.[3] (*See generally* Compl.) Here, Daye fails to allege any of these events.[4]

---

[3] The Court assumes that Daye retained a lawyer after receiving the Letter based on the present suit. This "alone cannot be a concrete injury sufficient to establish standing, or it would completely swallow the standing analysis under Article III." *Kola*, 2021 WL 4135153, at *7 n.11 (citing *Ward*, 9 F.4th at 363).

[4] In an attempt to meet its burden of proving jurisdiction as the removing party, GC Services postulates that Daye "suffered the inability to act appropriately" when faced with the "allegedly misleading and deceptive" Letter. (Def.'s Resp. to OTSC 6, ECF No. 27.) But Daye does not allege that he read the Letter. (*See* Compl.) Even if he did, for the above reasons the Court finds informational harm alone has no history in common law and is not a concrete harm. *Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, 21-2199, 2022 WL 3030390, at *5 (E.D.N.Y. Aug. 1, 2022) ("Rather, [p]laintiff's only alleged harm is an informational injury, which courts have found insufficient to confer standing in the FDCPA context.").

Apparently seeing the writing on the wall, Daye makes a last-ditch effort to establish standing on policy grounds. First, Daye illustrates *TransUnion*'s irony should it be read to create a "new breed of federal laws" where federal statutes must be litigated in state court for want of standing. (Pl.'s Resp. to OTSC 1-2.) Second, he notes that a literal reading of *TransUnion* tramples Congressional intent and its inherent authority to provide relief for its constituents through statutory enactment. (*Id.*) Neither are appropriate considerations for this Court. *United States v. Arizaga-Acosta*, 436 F.3d 506, 508 (5th Cir. 2006) ("This court must follow the precedent . . . unless and until the Supreme Court itself determines to overrule it."). Nor will the Court "reject most of the non-binding authorities from this [d]istrict" interpreting *TransUnion* in the FDCPA context, as Daye requests. (Pl.'s Resp. to OTSC 12.) The Court finds the reasoning of those courts sound and, accordingly, it finds Daye lacks standing.

## IV. CONCLUSION

For the above reasons, the Court finds that Daye lacks standing to bring his FDCPA suit in federal court. The Court therefore remands this matter to state court. The Court will issue an order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**